09028 Medallia Serrano v. Carlos Rotman M.D. Deborah Thomas, Debra D.E.B.R.A. Thomas, T.H.O. M.A.S. Pete Davidson, Michael Counsel Krista Frick, F.R.I.C.K. On behalf of the F.L.E., Dr. Rotman Well, you heard it. It seems we let people go maybe too long, but you'll get the same treatment. Okay, Your Honor. I'll try and move along. No, just make your best presentation. Thank you. May it please the court and counsel. When a jury hears that a defendant is accusing a plaintiff's counsel of falsely attributing statements to him, and a jury hears defense counsel expressing his belief that false statements are being attributed to his client, plaintiff's case is irreparably tainted. Unless the trial judge steps in and takes action and sets the record straight. In this particular case, this is what happened and the trial court did nothing. I'm going to address that issue, which is the Rule 213, I'm sorry, 216 issue this morning, as well as a second issue, the negligence instruction, I.P.I. 1001, resulting, which ultimately resulted in the dismissal of our count too. The way this case was handled, Dr. Rotman, ultimately by denying his admission in open court, was able to avoid responsibility for what his lawyer said for him. That he elected not to infuse McDahlia Serrano with factor IX concentrate before, during, or after her surgery. He was also able to avoid responsibility by reason of our negligence instruction being denied and our count too being stricken. He was able to avoid responsibility for the total breach of communication between himself and his admitted agent and employee, Ms. Gutierrez. Right off the beat, after hearing almost similar arguments in the last case, I go right to the heart of this thing and say, wasn't the question ambiguous? Absolutely not, Your Honor. I mean, I know you weren't the trial attorney, but I could have written a much more specific question. I was the trial attorney. You were? Okay, sir. Yes. I just, I find this question, it had to be more honed. Your Honor, consider this. If we were to have asked, you did not infuse McDahlia Serrano with factor IX concentrate, that would have been clear, true? It would have meant nothing to our case because we chose to say you elected not to infuse McDahlia Serrano with factor IX concentrate. The word elected has a precise meaning. Its meaning is that a choice is being made, an absolute choice, a decision. You cannot, as Dr. Rotman conceded the clarity of this admission, on the stand in front of the jury. If it was that clear, why did you not go for summary judgment on that issue? Why was a trial necessary if it's that clear? We had a very good reason, Your Honor. That admission that he elected not to infuse Mrs. Serrano had absolutely nothing to do with what he knew or didn't know about his condition, her condition of factor IX deficiency. All that mattered was that he knew factor IX was an available choice to use at the time of surgery. What was missing for summary judgment was a lack of dispute on the issue of what the standard of care required, if that's all he knew. Now, at trial, for the first time, Dr. Rotman admitted that if all he knew was that the plaintiff happened to come to surgery with factor IX concentrate, he admitted, he conceded that he was required to seek the hematology consult and get her blood tests on factor IX. In other words, he was required to do some investigating and not ignore it. And that's why we argue we were entitled to a directed verdict. That was the standard of care that Dr. Dubow, plaintiff's expert, testified to. If all he knew was that she brought that product, had no clue that she may have had a child with hemophilia or a minor deficiency herself, that's all he knew, he was required to investigate. That's why we brought it up at trial. Our strategy was to get him to admit that, we would get our directed verdict, and we should have, because you cannot make another. Dr. Rotman conceded on the stand. He agreed with us. He was given the liberty of explaining, of saying, I elected not to infuse her because I didn't know about factor IX. Well, Dr. Rotman didn't want to make a fool out of himself and say something that really was illogical. So he flamboyantly disregarded our rules of procedure, totally denied ever having made that admission, and in so doing, he conceded the clarity of the admission. He said, how could I elect not to do something that I don't know about? I didn't admit that. That's your admission, not mine. And that's a concession on the clarity. There was nothing ambiguous, there was nothing equivocal. This was a clear, unequivocal statement from the party about a concrete fact. Consider this. You say, I struck the plaintiff with a baseball bat. What does that tell you? Not much. I elected to strike the plaintiff with a baseball bat. Now we're talking about an intent. Where's your question just real specific? Did you or did you not know of factor X being involved in this? Did she bring factor X to the hospital? Did the hospital allow factor X to be brought into the hospital? Now those are 216 questions that hone in on an issue. And those are just simple yes and no answers. This question leaves a door for an evidentiary hearing. I mean, it leaves, you know, the next question, is this a judicial admission or an evidentiary admission? You're going to argue it's judicial. I'm having trouble with that because, well, for one reason we're here. For a second reason, the judge in this case made, I thought, reasonable responses because I think he had trouble with your question. And I think this whole case centers around one thing. Is this an evidentiary admission? Your Honor, our position is it is a judicial admission. It was about a concrete fact that was within Dr. Rotman's knowledge, whether or not he made a choice to do an act. Not whether he just did the act or didn't do it, whether he made a choice. And the time to be arguing about the nature of the question goes back to when we served these. Counsel answered a number of requests to admit. And it's obvious in those responses that when a request from us appeared to be ambiguous, it was addressed in the response. This should have been addressed at the time. We have a right to assume and to build our trial strategy on the fact that we all know what the word elect means. I don't think it's a clear word. Standing alone, it's not a clear word. And I think, you know, you have to give us more on what a clear word is. There's a curve there to show that this is, or you're giving us facts about what the doctor did or didn't admit. But some of these aren't in the briefs. I'm sorry. A fact that the doctor did or didn't admit? Well, he qualifies. Well, he certainly admitted that assuming he knew that the plaintiff brought factor 9 concentrate to her surgery, he would have gotten a hematology consult and he would have tested her blood. But isn't that, unless I'm a little confused here, you don't bring medicine to a hospital. Your Honor, we had two hematologists testify in court that that was not only totally acceptable to bring factor 9 concentrate, but people who need it are encouraged to bring it to the hospital. Even Dr. Schilder, one of the two hematologists who testified, he said fortunately she came with her own factor 9. People with factor deficiency are expected to bring it because it's not commonly sold anywhere. But there should be a track record on that. Well, the boxes were labeled. Everybody conceded the boxes had labeling on them, who they were for. But usually a hospital would take those at the door. There would be a receipt. You would not be allowed to walk into a hospital with medicine. You would get a receipt and that would be delivered to an operating room. Well, this was not a hospital. This was a surgical center. Same difference. There's specific laws on that. Your Honor, are you suggesting that it's a question of whether the factor 9 was actually brought to the center? I'm saying from the briefs, I can't conclude that they totally may or may not have been. Your Honor, the anesthesiologist who examined her right before surgery noted that she had brought the factor 9. It's in his record, which is part of the Oak Brook Surgical Center operations record, the surgical record. Okay. And he noted right there. Would you like to say to the record? No, no. I believe you. I'm just saying that that wasn't real specific. Okay. But that was in the record and that is a record that Dr. Rotman, according to Ms. Gutierrez, his employee, reviews before every surgery. Okay. So he should have seen it. I mean, when we got this admission back, we actually thought that he was not going to contest that he saw the factor 9, that he knew she brought it. In your request to admit, did you ask him about the factor 9 and whether he knew about it? Did he deny it in your other request to admit? Your Honor, let me... Your Honor, this whole question dealing with the product was that he elected not to infuse her with factor 9 concentrate. So there's no other question regarding whether he knew about it or was aware that it was there? No, no. And from a practical point of view, Your Honor, these, as you're well aware, were never verified by Dr. Rotman. And that's one of our arguments. I mean, actually, if we wanted to raise the issue at trial, we just could have asked on opening day. He won a directed verdict because he, you know, these admissions go to whether he knew that she had a condition known as hemophilia B or factor 9 deficiency. That was denied. That denial is meaningless when it's not certified by Dr. Rotman. Going back to your opening statement that the plaintiff was irreparably prejudiced by the manner in which Judge Rogin handled this issue, you were given the opportunity to argue to the jury your understanding of what the admission was, that the defendant had elected not to administer the factor and that by electing he actually knew of the plaintiff's condition and voluntarily chose not to give her the medicine despite that knowledge. Weren't you given that opportunity? I would change your question respectfully. The admission did not suggest that he knew about the plaintiff's condition. It suggested that he knew she brought a blood product to the surgery. And by his own admission, that would have triggered a duty on his part to further investigate. By using the word elected, one could put different inferences on the use of that word. You could infer that he not only knew that she brought the factor, that he was aware of the necessity for using the factor or not using it. You could take a whole different realm of possibilities that would flow from that inference. Your Honor, I submit to you the fact that he elected not to use a specific medication tells us one thing and one thing only. That he knew that medication was available for her surgery. Well, that's your take on what the result would be, but I'm sure that the three of us could arrive at other conclusions based upon our interpretation of that word. And that gives rise to the ambiguity that Justice Smith had mentioned earlier. Even if this Court believes that it was an ambiguous request and that the fact that the defendant did not raise that at the time the lawyer responded, that Dr. Rotman is not bound by his lawyer's admission, if this Court believes all of that, we are still left with Dr. Rotman's denial in court of Rule 216 admission, of ever having made it. The Court gave him wide leeway to explain it, to say, well, I elect, that doesn't mean I knew. He could have done any of that with the Court's ruling, but what he absolutely did not have the right to do is call a plaintiff a liar and accuse plaintiffs of manufacturing false evidence attributing false statements to him. That was wrong. The Court should have stepped in and attainted this entire case. There is no question about that. How did we look before the jury? The jury either assumed that we were making up evidence, because the Court never admonished Dr. Rotman, never instructed the jury that this is a Rule 216 admission, Dr. Rotman has the right to put in evidence contravening that admission, but he cannot deny that it was made. Otherwise, what is the point of Rule 216? That's been going on for the last four years. That's why all the changes are being made in 216. Respectfully, the only change has been primarily for the benefit of pro se litigants to remind them, perhaps new lawyers, that Rule 216 has very strict requirements. In Brubank v. Olson, this Court was called upon to look at a judge's ruling that allowed a defendant whose client was missing to sign the admissions. The doctor wasn't, in contrast to what I said before, I don't think she represented him at trial. But I'm saying, I'm sure that all three of us here would say that the question should have been, you know, denied or not answered, or objected to. But the court agreed it was a proper Rule 216 admission. I can't say that clearly. That's the thing that bothers me. That's why I asked you precisely why don't we have more questions. And I'm only saying this for cases I had done myself. I would have at least five questions in each area asking the same question in a different format. Because I never trusted what one question would do. So I'm saying I'm still puzzled. And as I said, I've read this thing at least eight or nine times. And I normally don't, you know, come out and say that, but I do, you know, to be honest with you, I never thought about judicial admission versus evidentiary admission. And I had to go and read cases on that. And it sure looks like an evidentiary admission, which gets us into problems. Your Honor, our position is that the word elect has one meaning. And if Dr. Rotman agreed at trial, it had but one meaning. And he felt that gave him the right to deny ever having made the admission. I'm not sure why we are here when I say it's clear. Dr. Rotman says it's clear. At least he did on the stand. And he's bound by that. If nothing, he's bound by admitting that that statement that he elected not to give factor nine concentrate was clear. That's why he said I never would have made such a statement. Suppose he had said no to your question. Did you elect not to give factor nine? He said no. Isn't there still a question, if he had denied it, don't we have an issue here? If he said no, we could have come back and clarified. Because we got a straight admission, we had a right to rely on it. The burden, and this is clear under vision point of sales of the Supreme Court decision. The burden was on Dr. Rotman to follow certain steps when he received those requests for admission. He didn't. And then to come into court and complain through his lawyer that they're not clear. And then take the step which he did appear on the stand and say yes, it is clear. This is an educated man. If he and I both agree that there's clarity in that admission and he believed that to the point where he flamboyantly disregarded the rule of court, the orders of court, on how far he could go in addressing that admission, I'm not sure what we're talking about in terms of the word elect is unclear. It wasn't unclear to Dr. Rotman and it certainly wasn't unclear to me. And it wasn't unclear to our judge when he first looked at it. He seemed to have varying theories. It changed as the trial went on. His very first response to the admission was yes, okay, that's a clear admission, you may read it to the jury. So now it's in. Now it's our admission, we're putting it to the jury, it's in evidence. He refused to instruct the jury at that point and he did allow Dr. Rotman to explain it by giving medical reasons why he elected not to infuse Mrs. Serrano. We could have lived with that, Your Honors, we could have lived with that. He could have said I elected not to infuse her because I had no idea she was factor 9 deficient. I didn't understand why the medication was stuck. Isn't that what he said? I'm looking at your brief on page 23 when Mr. Davidson is examining him and he says it's been established that you have admitted in this case you elected not to give the factor 9. Dr. Rotman, that's not true. You're playing with words. I never said that. I cannot elect to do something that I have no knowledge of. Mr. Davidson, were you sitting here and did you hear this presented to the jury that it was admitted? Dr. Rotman, admitted by you and not by me. Mr. Stalman, how could he do something he knows nothing about? That's how we answered it. How many times do we have to go through this? His explanation was denying that he ever said those words. I don't read this colloquy here as him denying that he used those words. He's saying what he meant by admitting what he admitted to, that he had elected not to give the factor. And why? Your Honor, I don't think Dr. Rotman could have been more clear when he said those are not my words. That's your admission, not my admission. It's the gloss that's being placed on the admission. You're placing a certain gloss on it and Rotman is placing another gloss on it. He's saying how could I admit to something if I didn't know it existed? That's what he seems to be saying and he was given leeway to do that by the court. Your Honor, our position is that that was an outright denial of having made the statement in the first place. And under Rule 216, he was not permitted to do that. He could have explained the admission, given medical reasons for his election not to infuse. He could have said she wasn't bleeding much, I was the surgeon, I didn't think she needed it. He could have said I gave her a blood test two days earlier to check her clotting time, which he did. He said none of that. He outright denied that the admission was his. He accused us of putting something before him that were not his words. I'm not putting a spin on that, Your Honor. Respectfully, that's what he said in the words that you just read to us. Our position is if nothing else, that deprived us of a fair trial because it was never addressed by the court. Do you want to address the vicarious liability? Yes, Your Honor. At the jury instruction conference, after we had presented evidence of Ms. Gutierrez's duty to take information, whether from a new patient or in conversations with an existing patient, we gave the court IPI 1001 on negligence. Now, at the time we tendered this instruction, we had a count two of the complaint alleging vicarious liability of Dr. Rotman for the negligent acts of Ms. Gutierrez. The court was convinced that the only standard applicable in the case was the standard of care governing a gynecological surgeon. The court said, I don't care if it's the agent, whoever. The only standard that applies is that of the surgeon. We pointed out that under Petrie v. Cardiovascular Consultants, we needed a negligence instruction, something to define the conduct of Ms. Gutierrez, because count two alleged that she failed to write down, report, that Mrs. Serrano was bringing factor IX concentrate to the surgery, and she testified as to what her duties were, how she was trained. She was to take this information, write it in the chart, and then on the day of surgery, she was to bring the charts to Dr. Rotman. But he did give 10501, and it appears he gave an agency instruction. Is that what he did? Yes. He gave an agency instruction that Ms. Gutierrez was the agent of Dr. Rotman. How did that help us when after he denied our negligence instruction, he went down that logical path, he denied our issues instruction on count two, and then threw out count two for vicarious liability, after we had put in our case a vicarious liability? What he did in doing this was force the jury to look at the arguments and the evidence we made that Ms. Gutierrez is the intermediary between Mrs. Serrano and Dr. Rotman, and not have any basis on which to hold Dr. Rotman responsible for Ms. Gutierrez's negligent conduct. It's like telling the jury. The jury is forced to consider why the information didn't get through to Rotman, but isn't told to consider that the phone wasn't working. There was no reason to strike on count two, and this stemmed from the court's error in finding that the only standard applicable in this case was that of a gynecologist, a surgeon, and that if anybody violated a standard of care, it had to be the standard of care of a surgeon. That made no sense. And we were stripped of a very important theory of liability in our case. The jury could have found that Dr. Rotman didn't know. Mrs. Serrano testified openly. She never told Dr. Rotman. She was told to communicate specifically with Ms. Gutierrez, and all of her contact, all of her phone calls, all of her office visits were with Ms. Gutierrez. And interestingly, there was absolutely nothing in the chart from January 13, when she was examined by Dr. Rotman, until after her surgery of March 18. Not one note setting up the surgery, not anything written down about communications over the phone, about giving instructions, nothing. There was ample evidence to find that Ms. Gutierrez was negligent in not writing things in the chart. We had a right to argue that our count two was taken away because the judge somehow misunderstood the concept that we needed a negligence instruction under country versus cardiovascular consultants that would govern the agent, the employee's conduct. And if the employee reached that standard of negligence, that standard of care, then the liability would go upstream to Dr. Rotman. That was not part of our case. And we put on clear evidence of that case because we knew it could be coming. We knew the jury could say, well, gee, Dr. Rotman didn't know. Mrs. Rano didn't talk to him. We did cover that case and it was taken away from us. Dr. Rotman was judged as a result. He was able to bootstrap his defense that nobody told me anything and tack it on to what was our theory of liability. Nobody told me anything, not even my own staff. And we had no way, once we lost our ability to discuss negligence of August Gutierrez. I think we put forth in our brief all of the evidence we put on that point. Dr. DeBow, our expert, even talked about the office procedures that should be in place in a gynecological surgeon's office. Dr. Rotman covered that. There were no omissions, no reason why that count should have been stripped from us. Any questions on that, Your Honor? No, I think you've covered it well. Okay. Good afternoon. May it please the Court also. There's a lot to cover, so I'll start. If the Court would like to direct me in any one direction, I'm happy to go there. A few things I think that are important to point out in the beginning. It was uncontested throughout the trial that Mrs. Rano never told Dr. Rotman that she had a condition of hemophilia or that she was bringing any medication to the surgical center. That's not contested at any point. To answer some of the Court's questions that were posed to plaintiff's counsel, the first being the issue of medication being brought to a surgical center, how that would have been unusual. And in fact, a review of Dr. Koichmeister's, the anesthesiologist, his deposition, that's exactly what he stated. He stated, based on my notes and what I wrote here, I wouldn't have even thought that she had this condition because what she told me was my son has Factor IX. I brought this in case of urgent matters. So he said, based on that, I wouldn't have even thought she had the condition. He further went on to say, and I couldn't have given it anyway. It's very unusual. It was unsecured were his words. I don't know where this came from. It's not usually how it happens. So it is unusual, to answer your question. One of the things counsel stated was that the CMA Gutierrez testified that Dr. Rotman reviews the anesthesia records prior to surgery. That is an error. Ms. Gutierrez never testified to that. She testified that Dr. Rotman reviews his own records prior to surgery, as well as the admitting records from the surgical center. In fact, another question that you asked, if Dr. Rotman was ever asked whether he was aware of the Factor IX being in the surgical suite or the surgical area, and counsel said he was not, I would just direct the court to page 9 of the defendant's brief and your attention to volume H, pages 357, 495, and 567. Just for this court's purposes. Dr. Rotman was asked. And I'm referring to at this point, 460, 8 of the record. Dr. Rotman states, so I don't go around saying I don't see this. I only put my findings, he's speaking of in his records. If I would have seen it, it would have been in the chart. If it's not in the chart, I didn't see it. He further testified at page 357. He's asked, they were showing him, Plaintiff's counsel was showing him the anesthesia records, where there's a note that says, patient has signed with history of Factor IX deficiency, has brought Factor IX in in case of urgent matters. And Dr. Rotman says, yeah, right. So this is a form filled out by the anesthesiologist. Dr. Rotman says, yes. The question is, was he operating with you? He says, I don't look at the anesthesia records. And he says, that's not what I'm asking you. Was it in the operating room? He said, I don't know. So he contested throughout the trial, that he ever knew that this medication was in there. To answer the question as to why this wasn't denied, at the time the request to admit was given to the doctor. I will represent, I was not the trial attorney. At the time, however, I was working with the trial attorney at that firm. The question itself says, you elected not to give Mrs. Serrano Factor IX. It's uncontested. He did not give it to her. And just as he elected, we can say, to not give her hundreds of other types of medications, for which she had no basis to believe she needed, he didn't. In fact, if he had denied it, it would have given the sense of, well, he was denying that he didn't elect not to give it to her. Could it have been objected to? Certainly it could have been. It doesn't change the fact that it is, as this Court has seen thus far, ambiguous. So I'd like to go through, both on two fronts, given that it's a de novo review as to whether or not an admission is a I think under either finding, it still supports the ruling of the trial court in this case. As this Court knows, the trial court said, you know, he did admit that he elected not to give it. So he can't deny that he didn't give it. So that's judicial to that point. Right, that it's judicial. He said, but this doesn't say anything about what it was or why it was. So he can testify as to why he didn't give it, why he elected not to give it, which in this case was disputed throughout through discovery, through trial, was that he didn't know two things. One, that the patient had this condition. She conceded. She never told him. And two, that he didn't know that this medication was brought in by the patient in the surgical suite and would have been available. In fact, he did say at trial two things. One, if I knew she had hemophilia, I never would have done the surgery without having her evaluated by a hematologist. And he says, and two, if during surgery or immediately prior, I was told by the anesthesiologist, you know, she brought this medication, he would have said, game over. We need to stop. We need to have her seen by a hematologist. Counsel has argued that Dr. Rotman never acknowledged that this was ever made on his behalf. And on that I would state a few things. Counsel said that Dr. Rotman, you know, called counsel a liar. None of those statements were ever made. The statement that was made was during a heated moment. Counsel for plaintiffs said, well, you admitted it. You admitted you elected not to give it. And he said, I didn't admit it. You admitted it. How could I elect to do something I don't know anything of? One thing's for sure. Plaintiff's counsel has stated to you that the court should have instructed the jury at that point if something should have. Reprimanded Dr. Rotman. A review of the record shows plaintiff's counsel made no objection at that time when Dr. Rotman made this statement. Rather, it was going back and forth. This had been going on a review of record will show for some time in the proceedings, going back and forth of whether he elected, whether he knew. And Dr. Rotman was basically saying, I didn't know. That's why I didn't give it. Second of all, I think the jury was, they knew what Dr. Rotman had said. Plaintiffs were permitted to publish the actual request to admit and his answer to the jury. That was published to them. They were shown, that was shown to them. During closing argument it was shown to them. It was set up as a big exhibit in front of them. So they were clearly able to see that the word admitted was there. So it's our position that he did not deny that he admitted, that he wrote that the term admitted was made on his behalf. What he was denying was plaintiff's intended use of that admission to imply or infer knowledge. And I think that's where I get into whether or not this was even a judicial admission. Under a de novo review I think we can make the argument it was not a concrete fact that was unequivocal. The case law makes clear that a judicial admission cannot be an inference or something to be implied. Plaintiff's counsel's argument throughout the trial was that the term elect implied knowledge. And that in and of itself would render it not a judicial admission. One of the things that came up was, well what's the purpose of Supreme Court Rule 216 then? And I think a review of the notes, the Supreme Court notes on Rule 216 make clear what the purpose is. It's to be used for issues to save time, so that people don't have to bring in evidence to determine facts or to establish facts that are not contested. What the notes do say is that it's not appropriate to use to try to blanket a case and it's not appropriate to be used on matters that are contested or disputed. Plaintiff, I understand that it was their trial strategy at that point and every attorney is entitled to their own strategy. The fact that they chose a strategy using a very equivocal term, I think the court handled it properly, allowing plaintiff to have significant latitude on arguing the inferences even of what the jury could infer if they wanted to from the admission. The instruction of one of the issues plaintiff has raised is the instruction and that the trial court erred in not instructing the jury on the request to admit. First, I would point out that in the brief, there's no case law argument setting forth that the non-IPI instruction should have been given. So the first argument I would make is that has been forfeited, even if not forfeited, even if we get past that, however. As this court's aware, the instruction would have had to have been supported by the evidence. Where the court found that the admission, whether evidentiary or judicial, whichever way you go, did not alleviate or dismiss the overriding issue of Dr. Rotman's knowledge, which really is what this case is about, no instruction would have been proper. They couldn't have told the jury, well, you don't have to consider Dr. Rotman's knowledge because he's admitted he knew. That's what plaintiffs want. What about the statement as to count two alone, not leaving Dr. Rotman out of it, just honing in on count two, vicarious liability. So we're moving away from the request. Why did the judge strike it? First argument I make on that is plaintiff has never alleged as error, either in her post-trial motion or on appeal before this court. I understand. I was just trying to get to the jury instruction. So even if it were, let's say it weren't forfeited and that had been raised, the basis for the court's decision, although the plaintiff points out in their brief that the basis for the court's decision was the court's finding that the standard for the principal, the physician, would be the same as its employee. That respectfully is incorrect. The court never said that. What the court based its ruling on in not giving the ordinary negligence instruction of 1001 was that two things. There was no evidence, one, that the CMA Gutierrez was negligent. Nobody testified to that. Plaintiff's counsel was speaking of the testimony of Ms. Gutierrez when she was testifying as her duties as a CMA. Dr. Dubois, a review of his testimony, makes clear his testimony was limited to the standard of care required for a gynecological surgeon and his office. The allegations of negligence made by Dr. Dubois and the opinions offered by Dr. Dubois were related to Dr. Rotman's alleged negligence and whether he complied with the standard of care in delegating certain tasks to the CMA. And to his alleged negligence or his compliance with the standard of care in implementing or putting in place certain policies and procedures in his office. No one testified that the CMA was negligent. So you're saying nobody testified on their side as to her negligence. That she was negligent, correct. In fact, when plaintiff was asked by the trial court about that, plaintiff's counsel, he conceded. All he was able to point to, he stated, well, Dr. Dubois did speak to that Dr. Rotman was negligent in delegating. And I would urge the court, it's volume 10, 823 to 824, where Dr. Dubois is talking about his opinions and the standard of care to which he was speaking. So the first reason the court denied the ordinary negligence instruction was nobody testified she was negligent. Secondly, there was no testimony as to what standard this CMA Gutierrez's conduct was to be judged. And plaintiff's reliance on Petrie, interestingly Petrie was a case that was appealed before this court three times. I was the attorney who appealed it before this court three times, so for that I apologize. But that case, although the facts were distinguishable, the holding actually supports the defendant. What occurred in Petrie was the plaintiff's attorney brought a cause of action against both the physician individually and his medical practice. The allegations against the medical practice were that some non-physician, whether it was a nurse, a receptionist, and it was unknown at the time of trial, was negligent in their acts in their office. The jury came back with a verdict for Dr. Kucich, for the individual physician, and against cardiovascular medical associates, his practice. We appealed and said no one testified what the standard of care was for the jury to find against any non-physician. And this court reversed and sent it back and said, defendants you're right, there was no basis for the jury's verdict to find that some non-physician was negligent because the jury never had a standard of care or any standard whatsoever against which that non-physician's conduct was to be judged. And that was the case here. This case goes even further than Petrie because not only do we not have a standard against which CMA Gutierrez's conduct was to be judged, we don't have anyone saying she was negligent. Dr. DuBois did not testify to either her negligence or to any standard to be applied to her. The plaintiff offered no evidence from a CMA or anyone who is familiar with a CMA to say what their standard of care was and whether or not she violated that standard of care. Second of all, going back to because plaintiff never contested or alleged, as it was erroneous, that the issue instruction that was ultimately given to the jury, it's never been asserted, even post-trial, it can be presumed that the issue instruction that went to the jury was appropriate.  The jury set forth only allegations of negligence relevant to Dr. Rotman, that he was negligent in delegating certain tasks to the CMA, that he was negligent in not implementing certain policies for his staff and CMA. Those were all issues that went to the professional negligence standard of care to which the jury was given. Under that issue instruction, had the jury been given an ordinary negligence instruction or 1001, it would have been, A, not supported by any evidence, and two, terribly confusing, almost to what this court has recently gone through with the changing of the professional negligence instruction to make sure the jury doesn't get confused. The testimony the plaintiff sought to regarding Dr. Gutierrez and Dr. Rotman and their practices and the telephone calls, she alluded to the medical records, how there was no entries between the time that she last saw Dr. Rotman and the surgery and that in and of itself was evidence of CMA Gutierrez's negligence. Not only did no one testify to that, but a review of the testimony of Dr. Rotman and CMA Gutierrez made clear that, although it is routine that they make these calls to the patient prior to surgery to make sure you follow your pre-surgical instructions, it was not routine for them to write it down. If there's any other issues that the court feels I haven't addressed, the plaintiff has risen, I'm happy to address them. Otherwise, defendants would stand on their brief. I think the trial court was well within its discretion in its rulings. Whether this court finds that the 216 issue, whether it was a judicial admission or an evidentiary admission, I think under a judicial admission the court handled it appropriately. I think under an evidentiary admission, which we believe it is, the court also would have handled it appropriately. The plaintiff was not prejudiced by the rulings. They had ample latitude to make their arguments of inferences, both during the trial and during closing arguments. And the ordinary negligence, aside from the forfeiture of ever alleging that the issue instruction was erroneous, which is significant, I believe, even assuming we look at that issue instruction, it would have required evidence to support an ordinary negligence instruction, both of negligence and of the standard that negligence had to be measured against. Thank you. Thank you. Very briefly, considering the finding of this court that the admission was evidentiary, I respectfully submit that this court, under vision point of sales, really has no authority to find that it is anything other than a judicial admission and must judge the issue based on that fact. As far as no one testifying that Ms. Gutierrez was negligent, Ms. Gutierrez was an unlicensed office worker. She had a course as a medical assistant, and she was certified by the school, and that's all she was. So it wasn't a case where we needed a licensed person coming in and talking about a standard of care. We had established what her duties were. We tendered a negligence instruction. We would have been happy to give the court a negligence instruction tailored to a certified medical assistant. That was not the court's problem, so it would have been useless for us to do so. The point is we did not need expert testimony to tell the jury that Ms. Gutierrez was negligent. That was up to them. We had testimony both from Dr. DeBow and Dr. Rotman, as well as Ms. Gutierrez herself, testifying as to the procedures in place. Both surgeons were capable of talking about the procedures that should be in place in an office, procedures everyone is expected to follow. And with all due respect, that is what the Petrick case was about and what was lacking. The doctor who testified, who gave testimony about the office worker, was unfamiliar with the office procedures for reporting a lab test. And finally, this was not a lab test. This was a simple communication of the type of testimony that lay people, it is so simple, lay people can judge on their own. As long as they knew what procedures should have been in place and followed, they had a basis to judge Ms. Gutierrez's conduct. And that's what we were deprived of. There was no banter with Dr. Rotman on the admission. We did not ask him numerous questions about the admission and what he elected to do or not do. And after he denied making the admission and said the words, the words that were put to him, he said, that's not true. If that isn't calling someone a liar, I don't know what is. That's not true. The judge, immediately on the heels of defense counsel, jumping up and saying, that's right, that's right, how could he make such an admission when it came out of his own office? The trial court said, I know what the record shows. Move along. You stand there before the jury with egg on your face. You ask for a sidebar at that time and risk coming back out and having more egg on your face. We waited until the first time we were in chambers and immediately raised it that Dr. Rotman had denied making the admission and opened court before the jury. And we were put in a terrible position. The judge wrestled with that one. He, again, refused to instruct the jury, saying that would take the issue away from the jury. And that's why he didn't do it. He knew if he gave the instruction, it would take it away from the jury. We'd have a directed verdict. Ultimately, during that encounter, he became confused and wondered if the admissions were indeed binding on Dr. Rotman because they were signed by counsel and took the whole matter under advisement. At the jury conference, the jury instruction conference, when we again asked for an instruction, the court again said no. Tellingly, one of the court's comments on this matter was, had this been taken up on summary judgment, this case would not be before me. I have some other case here. He believed in the strength of the admission to get us to that point. He may have been confused on whether we had the standard of care evidence on what Dr. Rotman was required to do in that situation, but he believed at that time that this was a judicial admission and not at all equivocal. And last thing I promise, implications. Under Capone v. Larry 66, crystal clear, this court said, an admission carries with it all facts necessarily implied. Necessarily implied. When you say I elected to do something or not to do something, what's implied? That you've made a conscious choice. You've made an informed choice. Thank you, Your Honor. Thank you. Well, both sides obviously believed their arguments. You argued them very well, and your briefs were very good. And as I told the other two panels, we will let you know before the end of the year.